Filed 7/18/14  P. v. Frakes CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073382 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F05600) |
| v. | |
| CHRISTOPHER JOHN FRAKES, | |
| Defendant and Appellant. | |

Convicted by a jury of carjacking (count one; Pen. Code, § 215, subd. (a)),[1] second degree robbery (count two; § 211), and found to have been involved where a principal in the offense was armed with a firearm (§ 12022, subd. (a)(1)), defendant Christopher John Frakes contends the trial court erred prejudicially by admitting evidence of a prior uncharged act (Evid. Code, § 1101, subd. (b)).  We affirm.

---

[1]     Undesignated section references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

*The Preliminary Hearing*

The evidence presented at the preliminary hearing showed that defendant was one of three men involved in a late night carjacking on August 19, 2012. After getting out of a Jaguar, the three men approached the victim, who was standing in the street near the back of his Lexus. One man stood in front of him, another man went around to the victim's right, and the third man (defendant) went to the victim's left. The other two men spoke to the victim, then displayed firearms, but defendant did neither. One of the armed men pistol-whipped the victim and took his wallet and car keys. All three men got into the victim's car and drove away. Defendant was later found in the car after the police stopped it.

*The Uncharged Act Evidence*

The prosecutor moved in limine to admit the following evidence under Evidence Code section 1101, subdivision (b): "On January 29, 2008[,] at approximately 11:00 p[.]m[.][,] [d]efendant . . . along with the other suspects were giving 'hard looks' to 21[-]year[-]old Donald Story as he was leaving the AM/PM. Concerned for his safety, he began to walk home rather quickly. Someone yelled 'run' and Mr. Story began to run home. Mr. Story tried to cut th[r]ough the apartment complex but was caught by [d]efendant . . . and two other suspects. Defendant . . . said, 'Someone's going to die tonight.' At that point, one of the other suspects pulled up his shirt, revealing a black revolver in his waistband. Defendant . . . and the other suspects then held onto Mr. Story's jacket and walked him into the apartment complex where he lived. Once in an area of seclusion, while the suspects forcibly took Mr. Story's wallet and some change, [d]efendant . . . acted as a lookout and warned them if anyone was coming. [¶] Defendant . . . was ultimately adjudicated a ward with a sustained petition for [ ] section 487, [subdivision] (c) (felony), reduced from [ ] section 211." Asserting defendant was accused as an aider and abettor and his anticipated defense was a denial of the intent to

2

participate in a robbery, the prosecutor proffered this evidence to prove intent, motive, absence of mistake, and knowledge.

Defendant moved in limine to exclude the evidence, asserting his prior conduct was not sufficiently similar to the conduct alleged in the present case to prove intent or a common scheme or plan. In the prior case, defendant was an active participant in the robbery, but in the present case there was no evidence defendant was aware of the impending robbery or carjacking.

The trial court granted the prosecutor's motion and denied defendant's motion. The court found:

"[I]t appears from my review that the People intend to offer the evidence under 1101[, subdivision] (b) and intend to present evidence that the defendant was previously involved in a robbery involving three other defendants wherein he was initially actively a participant and then essentially acted as a lookout or did not participate in the taking itself, but stood by while others using weapons took the victim's wallet and some change.

"And I've considered the comparison of the facts in that case . . . to the facts in the case that is now alleged, in that the defendant participated with two others in surrounding the victim and allegedly, as the defendant stood by, the victim was pistol whipped, and his wallet and keys were taken, after which the defendant left the scene along with the suspects in the victim's car.

"So while I note the similarities, I also agree that the proffered purpose of the prior act evidence is to show motive or intent or knowledge or absence of mistake as opposed to identity, which . . . requires a greater degree [of similarity] than those other proffered purposes.

"These two instances, while they're not particularly distinctive, they are substantially similar.

"In this case the People are required to prove the element of intent.

3

"And it's not unreasonable under these circumstances to anticipate the defense that would suggest that the defendant is a bystander and unaware of the robbery and without any requisite intent or knowledge or motive or not an aider and abettor, simply just a bystander.

"I've considered my discretion under Evidence Code Section 352, and I'm aware of my discretion, and I'm balancing the probative value against the prejudicial effect a prior event could have.

"It's prudent to consider the timing of the act. There's four years difference. It's not particularly remote. I'm considering the potential for misconstruing the evidence as bad character or criminal disposition, which would be inappropriate.

"Though I also acknowledge that cases support the use of a limiting instruction, which takes care of that issue.

"The real question is whether or not the prior act is probative, proving a material fact in the current case, and I believe that the answer to that is undeniably yes.

"[T]he next question is it so prejudicial as to outweigh the probative effect, and I think not.

"The prior act itself is no more serious or offensive than the current charge and would not cast the defendant in such a light that the jury would have a difficult time independently evaluating the evidence in this case.

"So after due consideration of the Court's discretion under Evidence Code Section 352, the probative value of the evidence is not outweighed by the probability of undue prejudice.

"The People will be allowed to present the prior act evidence under 1101[, subdivision] (b).

"The Court will entertain a limiting instruction if requested by the defense in that regard."

4

The trial court later instructed the jury pursuant to CALCRIM No. 375 that it could consider the uncharged act evidence only as to intent, knowledge, absence of mistake or accident, or common plan or scheme, and not for any other purpose.

*Trial Evidence*

At approximately 11:30 p.m. on August 19, 2012, Bernard Shields drove to the home of his aunt Gloria Shields, with whom he lived on Renick Way in North Highlands. He parked his 2002 Lexus in front of the house and began to unload the car. A black Jaguar came down the street, stopped next to him, and dropped off three men, two of whom appeared to be "[B]lack mix" and the third Caucasian.[2] The men walked in the direction the Jaguar had gone.

Shields continued to unload his car. He went into the car to get his wallet and phone, then started to get out. Suddenly, he saw that the men had returned and were approaching him. While he was wedged between the open driver's side door and the body of the car, unable to retreat, one of the men came up to him, standing near the sidewalk, and started to talk to him, as the other two men stood toward the center of the street.

The first man, who was Black, asked if Shields knew Bakari Stafford. Shields knew that Stafford lived down the street, but did not say so because he did not know these people and it was late at night; instead, he said he did not know whom the man was talking about. The first man, joined by one of the other men, repeated the question again and again, getting progressively more agitated. Both men then pulled out guns. The third man, who appeared to be Caucasian, stood silently behind the others, doing nothing to stop what was going on. Shields could not flee because his path was blocked.

---

[2] According to the probation report, defendant is Hispanic.

5

The first man tried to hit Shields in the face with his gun. The second man pointed his gun directly at Shields. Not wanting to be shot in the face, Shields raised his left hand to try to deflect the first man's gun. As Shields struggled with him, the other man hit him in the back of the head, knocking him to the ground. Shields felt blood coming from the back of his head; he did not know if he had been shot or if he was dying. The first man went into his pockets and took his keys and wallet. All three men then jumped into Shields's car and drove away. The first man was driving; the third man was in the backseat.

Shields got up, stumbled to the door of his aunt's house, and knocked. At his request, she called 911. Paramedics arrived and took him to the emergency room at Mercy San Juan Medical Center. The doctors determined that he had been pistol-whipped, not shot.

At approximately 11:36 p.m. on August 19, 2012, Sacramento County Sheriff's Deputy Bruce Hrabak was dispatched to Gloria Shields's house in response to her 911 call. After speaking briefly with Bernard Shields and getting a description of his car, Hrabak broadcast the information about the suspect vehicle (the black Jaguar) and the stolen Lexus.

Sacramento County Sheriff's Deputy Adam Taylor, posted nearby, received Deputy Hrabak's dispatch call. Deputy Taylor spotted and followed the black Jaguar. Stopping it about a block from Renick Way, he found two females in the car. The car's registered owner, Devon McBride, was not there.

Deputy Hrabak went to the hospital and interviewed Shields at greater length. When Hrabak entered information about the Lexus into a computerized nationwide

6

recordkeeping system for stolen cars, he learned that the car was equipped with LoJack, an aftermarket electronic tracking device.[3]

At approximately 1:52 a.m. on August 20, 2012, Sacramento County Sheriff's Deputy Timothy Pai radioed that his patrol car was receiving tracking information from the LoJack. When Deputy Hrabak drove to Pai's location, they saw the stolen Lexus ahead of them. An extended chase ensued, eventually involving City of Sacramento police officers as well as county sheriff's deputies.

The Lexus was finally stopped in east Sacramento. The driver was Devon McBride, the Jaguar's registered owner. The passengers included defendant and the two females who had been in the Jaguar. Deputy Hrabak found Shields's wallet in the Lexus, containing his credit cards.

After learning that Shields had been released from the hospital, Deputy Hrabak contacted him and had him brought to the scene for a field showup. Shields identified McBride as the man who pointed his gun in his face, and defendant as the man who was with the others but did not have a gun.

Donald Story, the victim in the uncharged 2008 crime, testified that at approximately 9:45 p.m. on the night of the incident, he and two friends obtained marijuana from three males (one Black, one Caucasian, and one Hispanic). After taking the marijuana, Story's friends apparently ran off without paying for it.[4] The three sellers chased them. One said he had a gun. Story went through a fence, but got caught. He was taken to an apartment complex and held there against his will. The three men met

---

[3]     Shields had not known the car was so equipped.

[4]     Story claimed he left the scene while the transaction was taking place.

7

another Black male in the complex. A gun was passed among the men.[5] One of the men said, "Someone's gonna die tonight," but Story could not remember which one said it. The Hispanic male acted as a lookout. The men took everything in Story's wallet. When one of Story's friends came and tried to help, they grabbed him and put him up against the wall, and the Black male punched him in the face. The police arrived soon afterward.

Sacramento County Sheriff's Deputy Lindy Culp and his partner responded to a dispatch call about a disturbance in an apartment complex on the night of January 29, 2008; they found a group of five to seven persons at the scene. They detained two persons, one of whom was defendant, while the others scattered. Story told Deputy Culp that defendant helped the others in chasing Story down and detaining him, while the others went through his pockets; defendant also acted as a lookout at some point. There were guns involved, but defendant did not hold a gun. Defendant was 17 at the time of the incident.

Defendant did not put on any evidence. His counsel argued to the jury that the three men came to the scene to look for Bakari Stafford, not to commit a carjacking. When the others pulled guns on Shields, defendant was caught by surprise. He could not do anything about the situation because the others were "in control," and if he had left, they would have thought he was going to the police.

DISCUSSION

Defendant contends the trial court abused its discretion by admitting the uncharged prior act to prove intent, the evidence was unduly prejudicial under Evidence Code section 352, and the error in admitting the evidence violated his federal constitutional right to a fair trial. We are not persuaded.

---

**5** On cross-examination, Story recalled that he had told the police "the smaller Hispanic guy" never had the gun.

Evidence of prior uncharged acts is inadmissible to prove the defendant's bad character or propensity to commit crimes, but may be admitted if relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident, among other facts. (Evid. Code, § 1101, subds. (a), (b).) We review the trial court's rulings under Evidence Code sections 1101, subdivision (b) and 352 for abuse of discretion. (*People v. Smithey* (1999) 20 Cal.4th 936, 970 [Evid. Code, § 352]; *People v. Daniels* (1991) 52 Cal.3d 815, 856 [Evid. Code, § 1101, subd. (b)].)

"The least degree of similarity (between the uncharged act and the charged offense) is required to prove intent. [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 (*Ewoldt*).) "In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*Ibid.*)

Here, in the prior incident, defendant took part in a robbery by helping the other participants to chase and detain the victim, then by acting as a lookout, but did not display a gun or threaten the victim.[6] Similarly in the present case, defendant was accused of taking part in a carjacking by helping to block the victim's exit and acting as a lookout, but without displaying a gun or threatening to use force. As the trial court found, even though the past and prior offenses were not identical and defendant's participation in the prior offense may have been more active at the outset, his conduct on the present and prior occasions was sufficiently similar to meet *Ewoldt*'s test for intent. Defendant's contrary argument is merely bare assertion unsupported by authority on point.

---

**6** The People's Evidence Code section 1101, subdivision (b) motion in limine asserted defendant said, "Someone's going to die tonight," but Story testified that he could not recall who said that.

Furthermore, since defendant's theory of defense was that he lacked the intent to participate in the crime (or even the knowledge that it was about to occur), the uncharged misconduct evidence was material to the key disputed issue in the case. So far as the jury might have been inclined to consider the evidence for an improper purpose, we presume (absent contrary evidence, which defendant does not cite) the jury heeded the trial court's instruction not to do so. (*People v. Adcox* (1988) 47 Cal.3d 207, 253.)

The trial court did not abuse its discretion by finding the evidence admissible under Evidence Code section 1101, subdivision (b).

Likewise, the trial court properly exercised its discretion under Evidence Code section 352. As the court found, not only was the uncharged misconduct probative on a material issue, but it was not remote in time or substantially more serious or offensive than the present alleged misconduct. Thus, it was not likely to inflame the jury emotionally against defendant without regard to the facts of the present case. (*People v. Crew* (2003) 31 Cal.4th 822, 842.)

Because we have found no error in the trial court's ruling to admit the uncharged misconduct evidence, we need not address defendant's claim of prejudice from the evidence's admission.

DISPOSITION

The judgment is affirmed.

                                                   NICHOLSON     , Acting P. J.

We concur:

      ROBIE          , J.

      DUARTE        , J.